UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
UNITED STATES OF AMERICA,

    -against-                       ORDER
                                        No. 14-CR-0147 (JS)

CEDRIC MOSS,

        Defendant.

-------------------------------X

APPEARANCES

For Defendant:    Cedric Moss, <u>Pro Se</u>
                 Reg. No. 29354-058
                 FCI Danbury[1]
                 Federal Correctional Institution
                 Route 37
                 Danbury, Connecticut  06811

For United States:  Molly N. Delaney, Esq.
                 United States Attorney's Office
                 Eastern District of New York
                 217 Cadman Plaza East
                 Brooklyn, New York  11201


SEYBERT, District Judge:

        Currently before the Court is the <u>pro se</u> motion of

Defendant Cedric Moss ("Defendant") seeking compassionate release

in the form of a sentence reduction (hereafter, the "Motion").

---

[1] Pursuant to the Inmate Locator of the Bureau of Prisons ("BOP"), Defendant Moss is currently housed in FCI Danbury. <u>See</u> Fed. Bureau of Prisons ("BOP"): Find an Inmate, Cedric Moss (BOP Reg. No. 29354-058), https://www.bop.gov/inmateloc/ (last visited Aug. 7, 2024) (hereafter, the "Moss Locator Information") (identifying Defendant's location as "Danbury FCI"). Accordingly, the Clerk of Court is directed to update Defendant's address of record as listed above.

(See Motion, ECF No. 157; see also Reply, ECF No. 164.)   The Government opposes the Motion. (See Opp'n, ECF No. 161.).  For the following reasons, the Motion is **DENIED**.

RELEVANT BACKGROUND

I.   Defendant's Underlying Conviction

        The Court assumes the parties' familiarity with Defendant's conviction.  By way of general background, the Court provides the following summary.  In January 2013, the Drug Enforcement Agency ("DEA") Tactical Division Squad began an investigation on complaints from pharmacists on Long Island and in New York City regarding fraudulent prescriptions for oxycodone tablets presented to customers. (See Opp'n at 1.)  The investigation revealed Defendant orchestrated a fraudulent prescription scheme resulting in the illegal distribution of tens of thousands of oxycodone pills. (See id. (citing Presentence Investigation Report ("PSR") at ¶ 7.)  The scheme involved Defendant using stolen prescription pads (known as "EMRs") to forge prescriptions with the names, addresses, and DEA numbers of 61 practicing doctors. (Id.)  However, in lieu of the doctors' office telephone numbers on the EMRs, Defendant provided cell phone numbers of individuals he recruited to partake in his scheme. (See Opp'n at 1-2.)  Thus, co-conspirators would pose as health care providers to "verify" prescriptions when pharmacies would call. (Id. at 2.)  Defendant hired a network of "runners" or "couriers"

who provided patient information and attempted to fill the prescriptions and to whom he paid between $300 and $500 per prescription. (See id. (citing PSR at ¶ 8).)  Defendant then resold the oxycodone pills to individuals for $20 to $25 per pill. (See id. (citing PSR at ¶ 6).)

On February 20, 2014, Defendant was arrested in North Carolina. (See id. (citing PSR at ¶ 14).)  On October 9, 2014, he pled guilty to the single-count indictment, charging him with conspiry to distribute oxycodone, in violation of 21 U.S.C. § 846, between January 1, 2013 and February 20, 2014. (See id.; see also Plea Hr'g Min. Entry, ECF No. 31.)  Of import, in its PRS relied upon by the Court in formulating Defendant's sentence, the U.S. Probation Department ("Probation") informed the Court "that '[a]lthough the [D]efendant is in criminal history category V, his score underrepresents the seriousness of his criminal history' and flagged five additional convictions that did not result in criminal history points, as well as the fact that the [D]efendant 'committed this instant offense while he had two serious pending cases in North Carolina.'" (Id. (quoting PSR ¶ 111; emphasis added).)  On September 30, 2015, Defendant was sentenced to 180 months' imprisonment and three years' supervised release, which was below the Guidelines range. (See Opp'n at 2; see also Judgment, ECF No. 67.)  In sentencing Defendant, the Court stated the imposed sentence demonstrated the seriousness of Defendant's crime and

should act as a deterrent, but also accounted for Defendant's substance abuse issues. (See Statement of Reasons, ECF No. 68 (sealed), Section VI(D).)

Defendant is currently serving his sentence at the Federal Correctional Institute in Danbury, Connecticut; he has an anticipated release date of May 13, 2026. (See Moss Locator Information; see also Opp'n at 3.)

## II.  Relevant Procedural History

On December 12, 2023, Defendant moved for compassionate release. (See Motion.)  The Government opposes granting such relief. (See Opp'n.)  Said Motion is ripe for decision.

DISCUSSION

## I.  Applicable Law

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." United States v. Rabuffo, No. 16-CR-0148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14, 2020) (quoting United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020)).  The First Step Act, which modified 18 U.S.C. § 3582(c), allows a court to modify a defendant's sentence upon a motion of either (i) the Director of the BOP, or (ii) the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever

is earlier." 18 U.S.C. § 3582(c)(1)(A) (emphasis added); see also
United States v. Thrower, 495 F. Supp. 3d 132, 137 (E.D.N.Y. 2020).
"The statute imposes three independent, necessary requirements for
release: exhaustion of remedies, existence of an extraordinary and
compelling reason for sentence reduction, and that the § 3553(a)
[F]actors warrant reduction." United States v. Hunter, No. 21-
1773, 2022 WL 2288688, at *1 (2d Cir. June 24, 2022) (citing United
States v. Keitt, 21 F.4th 67, 71 (2d Cir. 2021) (per curiam)). "A
defendant's failure to exhaust administrative remedies is a
threshold matter preventing the [c]ourt from considering a Section
3582 application [, i.e., a motion for compassionate release]."
United States v. Robinson, No. 10-CR-0789, 2022 WL 16924176, at *3
(E.D.N.Y. Nov. 14, 2022) (quoting United States v. Alvarez, No.
89-CR-0229, 2020 WL 4904586, at *2 (E.D.N.Y. Aug. 20, 2020)); see
also United States v. Torres, No. 16-CR-0500, 2022 WL 538323, at
*2 (S.D.N.Y. Feb. 23, 2022) ("Before a compassionate-release
motion can be considered on the merits, the defendant must exhaust
administrative remedies." (quoting United States v. Williams-
Bethea, 464 F. Supp. 3d 562, 565 (S.D.N.Y. 2020)). And, "[i]f any
one requirement is not satisfied, the district court may deny the
motion without considering the remaining requirements." Hunter,
2022 WL 2288688, at *1 (citing Keitt, 21 F.4th at 72-73).

Where exhaustion is satisfied, in their consideration of
motions brought pursuant to the First Step Act, courts are not

restricted to the Sentencing Commission's applicable policy statements, but may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020); see also Keitt, 21 F.4th at 71 ("A court deciding a compassionate release motion can consider 'the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it].'" (alteration in original) (quoting Brooker, 976 F.3d at 237)).  Indeed, "[t]he only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" Brooker, 976 F.3d at 237-38 (emphasis and alteration in original) (quoting 28 U.S.C. § 994(t)); see also Ambrosio, 541 F. Supp. 3d at 254 (same).  "Additionally, district courts may consider 'intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act.'" United States v. Monteleone, No. 92-CR-0351, 2023 WL 2857559, at *2 (E.D.N.Y. Apr. 10, 2023) (quoting Concepcion v. United States, 142 S. Ct. 2389, 2404 (2022)).

Even where extraordinary and compelling reasons exist, the Court must "consider all the Section 3553(a) [F]actors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section

3553(a) [F]actors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." United States v. Davies, No. 17-CR-0057, 2020 WL 2307650, at *2 (E.D.N.Y. May 8, 2020) (citation omitted); see also United States v. Jones, No. 22-2008-cr, 2023 WL 8613867, at *2 (2d Cir. Dec. 13, 2023) (same).  "The defendant bears the burden of showing that the circumstances warrant a sentence reduction." United States v. Sellick, No. 21-2328, 2022 WL 16936829, at *1 (2d Cir. Nov. 15, 2022) (summary order) (citing United States v. Jones, 17 F.4th 371, 375 (2d Cir. 2021)); see also United States v. Friedlander, No. 20-CR-0441, 2022 WL 2305370, at *3 (E.D.N.Y. June 24, 2022) ("A defendant 'bears the burden of showing that his release is justified.'" (quoting United States v. Patterson, No. 06-CR-0080, 2020 WL 3451542, at *1 (S.D.N.Y. June 23, 2020)).

II.   Application

    A. Exhaustion

        Defendant claims he exhausted his administrative remedy via his "Emergency Request for Motion for Reduction in Sentence" made to "FCI-Victorville Medium #1 Warden", which was received by the Warden on October 5, 2023. (See Emergency Request, Ex. A, ECF No. 157 at ECF pp.13-14, attached to Motion; Warden Response, Ex. B, ECF No. 157 at ECF p.16, attached to Motion.)  The Warden denied Defendant's Emergency Request, stating he failed to meet the

criteria of "extraordinary or compelling" circumstances and failed to provide a detailed release plan. (See Warden Response.)

The Government has not raised an exhaustion defense. (See generally Opp'n.)   Therefore, since the Government has forfeited any such defense, the Court is "free to consider the merits" of Defendant's motion.  United States v. Saladino, 7 F.4th 120, 123 (2d Cir. 2021); see also United States v. Vasquez, No. 96-CR-1044, 2024 WL 2385264, *3 (E.D.N.Y. May 23, 2024) ("[B]ecause the Government has not raised an exhaustion defense, the Court finds that it has forfeited any such defense and the Court is 'free to consider the merits' of [defendant's compassionate release] motion" (quoting Saladino; collecting cases).  Hence, the Court proceeds to examine Defendant's claim of extraordinary circumstances warranting compassionate release.

B.   Defendant has Failed to Establish the Existence of Extraordinary and Compelling Circumstances

Defendant is currently 57-years-old.  See Moss Locator Information.  Defendant asks the Court to collectively consider the following: in light of current federal law, if sentenced today, Defendant's sentence would be substantially lower (see Motion at 4-5); the current, harsher-than-anticipated conditions in prison due to the COVID-19 Pandemic (see id. at 5-6); the purported sentencing disparity between Defendant and his co-defendant's (see id. at 8-9); and, Defendant's post-sentencing efforts, including

maintaining "clear conduct over the last several years," being a "[m]odel [i]nmate," "maintaining strong [f]amily [t]ies," maintaining an inmate job, receiving "[e]xcellent [w]ork [e]valuations," and completing several classes and programs (see id. at 8). Yet, neither individually nor in concert are these circumstances extraordinary or compelling.

As to Amendment 790 : Section 3582(c)(2) provides a court may reduce a term of imprisonment "based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). Defendant argues if he were sentenced today, under Amendment 790, he "would be held responsible for a substantially lower [amount] of drugs", thereby entitling him to a sentence reduction. (See Motion at 4.) The Court is unpersuaded.

As the Government aptly argues: Amendment 790 was "promulgated in 2015 to clarify use of relevant conduct in offenses involving multiple participants" and "was not a substantive change in policy." (Opp'n at 5-6 (quoting U.S.S.G. Amend. 790).) Indeed, because Amendment 790 is not listed as a covered amendment in the Sentencing Guidelines Policy Statement, §1B1.10(d), a sentence reduction would not be consistent with the Guideline's policy statement; therefore, the Court is not authorized by 18 U.S.C. § 3582(c)(2) to grant Defendant's requested sentence reduction. See

U.S.S.G. §1B1.10(a)(2).  Moreover, Defendant's reliance on United States v. Span in support of his Amendment 790 argument is unavailing; rather, this non-binding precedent supports the Government's argument that "Amendment 790 was implemented to clarify what conduct was relevant to sentencing determinations in offenses involving multiple participants, and the Commission stated that the clarification was 'not intended as a substantive change in policy.'"  437 F. Supp. 3d 659, 667 (N.D. Ill. 2020) (quoting Amendment 790); see also id. at notes 6 & 8 (noting Amendment 790, which was effective November 1, 2015, is not retroactive).

As to Harshness of Incarceration Caused by the Pandemic: "Undoubtedly, 'a day spent in prison under extreme lockdown and in well-founded fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison.'"  United States v. Johnson, 671 F. Supp. 3d 265, 281 (E.D.N.Y. 2023) (quoting United States v. Mcrae, No. 17-CR-0643, 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021)). Consequently, "particularly for defendants who have (i) served long sentences and (ii) been detained for the entirety of the pandemic," courts have been willing to conclude that "pandemic-induced conditions of confinement can constitute extraordinary and compelling circumstances warranting compassionate release."  Id. (quoting United States v. Oquendo,

No. 13-CR-0357, 2023 WL 199609, at *5 (S.D.N.Y. Jan. 17, 2023), and collecting cases); see also United States v. Russo, 643 F. Supp. 3d 325, 333 (E.D.N.Y. 2022) ("In addition to the health risks posed by the pandemic, the restrictions at [federal correctional facilities] during the pandemic have made [defendants'] incarceration[s] much more punitive than originally contemplated at the time of sentencing[s]." (citing United States v. Rodriquez, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020)).

However, as the Government highlights, Defendant's claims of Pandemic-related-harsh-conditions are baldly made. (See Opp'n at 4.) Yet, it is his burden to prove compassionate release is warranted. See Sellick, 2022 WL 16936829, at *1. Thus, in the absence of any factual support for his contentions, Defendant fails to meet his burden.

As an initial matter, in considering the COVID-19 situation in BOP facilities, one must recognize that the COVID-19 Public Health Emergency ended on May 11, 2023. See U.S. Dep't Health & Human Servs., Fact Sheet: End of the COVID-19 Public Health                    Emergency,                    available                    at https://hhs.gov/about/news/2023/05/09/fact-sheet-end-of-the-covid-19-public-health-emergency.html (last visited July 29, 2024). Therefore, it is no longer necessary for the BOP to engage in across-the-board special operations; indeed, FCI Danbury—the facility where Defendant is currently housed—is no longer

reporting a COVID-19 Operational Level.  See BOP FCI Danbury Home Page, available at https://www.bop.gov/locations/institutions/dan/ (last visited Aug. 2, 2024); compare BOP, Statistics: Inmate COVID-19 Data (reporting one currently open COVID-19 case), available at https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited Aug. 2, 2024).  Hence, the Court presumes the BOP has returned to operating FCI Danbury without COVID-19-related precautions, rendering this consideration of little weight.[2]  See, e.g., Jones, 17 F.4th at 375 (confinement in facility "where [COVID-19] counts are currently low" was not "extraordinary and compelling" circumstance).  Relatedly, while the COVID-19 Pandemic was active, BOP made extensive changes to its operations, putting in action a plan established in consultation with the Centers for Disease Control and Prevention and the World Health Organization. (See Opp'n at 4.)

---

[2]  The Court recognizes Defendant moved for compassionate release while housed in one of the BOP's Victorville facilities.  U.P.S. Victorville is no longer reporting a COVID-19 Operational Level. See BOP USP Victorville Home Page, available at https://www.bop.gov/locations/institutions/vip/ (last visited July 29, 2024); compare BOP, Statistics: Inmate COVID-19 Data (reporting one currently open COVID-19 case for all three Victorville facilities), available at https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited July 29, 2024).  Therefore, the Court presumes the Victorville facilities have also returned to operating without COVID-19-related precautions.

Second, restrictive conditions at a detention facility are not a basis for release. See Friedlander, 2022 WL 2305370, at *4. The COVID-19-related hardships of which Defendant complains "do not set [him] apart from the rest of the BOP inmate population and therefore do not, alone, constitute extraordinary and compelling reasons for his release.'" United States v. Johnson, No. 98-CR-0860, 2021 WL 1207314, at *4 (E.D.N.Y. Mar. 31, 2021)); see also, e.g., United States v. Veliu, No. 17-CR-0404, 2022 WL 2484240, at *5 (E.D.N.Y. July 6, 2022) ("[T]he conditions of confinement during the pandemic [do not] give rise to extraordinary and compelling circumstances. Although the Court acknowledges that 'the pandemic has made prison conditions harsher than usual, those are circumstances that all inmates have had to endure. While the Court does not minimize those difficulties, they do not rise to the level of extraordinary and compelling.'") (quoting United States v. Johnson, No. 18-CR-0907, 2021 WL 4120536, at *3 (S.D.N.Y. Sept. 9, 2021)); United States v. Pinto-Thomaz, 454 F. Supp. 3d 327, 329 (S.D.N.Y., 2020) (observing "it is hard to see how" the BOP's implementation of various protocols in attempting to contain the spread of COVID-19 "ma[d]e the situations of [defendants] 'extraordinary' in terms of the statutory requirement, for in these respects [the defendants] are no different from a host of other prisoners"). Standing alone, the harshness of conditions Defendant faced during the Pandemic were the same as those endured

by his fellow inmates; in that sense, they were not extraordinary. See, e.g., United States v. Martinez, No.03-CR-1049, 2022 WL 3019833, at *3 (E.D.N.Y. July 29, 2022) ("[G]eneralized COVID-19 concerns are not regarded as extraordinary and compelling reasons for compassionate release." (citations omitted)).

Third, even if the Court were to contemplate early release based upon COVID-19-related considerations, where the Court has granted such relief, it has been in conjunction with the presentation of some kind of serious health condition or risk factor that, potentially, would be exacerbated by COVID-19. See, e.g., United States v. Friedlander, No. 20-CR-0441, 2022 WL 2305370, at *3 (E.D.N.Y. June 24, 2022) (finding, where defendant "d[id] not identify any alleged medical condition or risk factor that would favor his early release," no extraordinary and compelling reason was presented warranting compassionate release). Here, Defendant has not done so. (See Motion, in toto; see also Reply, in toto.) Nor is Defendant's such a case. Rather, to the extent Defendant claims the BOP has failed to provide him with "adequate Medical Treatment" (Motion at 6), such claim is belied by his own medical records, which shows Defendant has received appropriate medical attention when necessary and is fully vaccinated against COVID-19. (See Moss Medical Records, Ex. 1, ECF No. 160-1 (filed under seal), attached to Opp'n.) There is nothing establishing Defendant is "so incapacitate[d by a medical

condition] as to warrant a reduction of his sentence." United States v. Lisi, 440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020) ("BOP's guidance, read in conjunction with the Application Notes to § 1B1.13 [of the U.S. Sentencing Guidelines], indicate that a defendant's medical condition must be one of substantial severity and irremediability, and [defendant] has not shown that he suffers from such conditions."). Thus, in the absence of records demonstrating his suffering from any medical condition, let alone one to such a degree that he is unable to self-care or is at greater risk of harm due to exposure to COVID-19, Defendant cannot sustain his burden warranting compassionate release. See, e.g., United States v. Brown, No. 12-CR-0120, 2024 WL 1639926, at *3 (E.D.N.Y. Apr. 16, 2024) (finding, where defendant provided vague allegations regarding his medical conditions and did not substantiate his claims of inadequate medical care, defendant failed to show his medical conditions constituted extraordinary and compelling reasons warranting a sentence reduction).

In sum, the restrictive conditions implemented in BOP facilities during the COVID-19 Pandemic do not constitute extraordinary and compelling reasons warranting Defendant's release. See United States v. Johnson, No. 98-CR-0860, 2021 WL 1207314, at *4 (E.D.N.Y. Mar. 31, 2021). The harsh conditions-of-confinement Defendant faced were the same as those endured by his fellow inmates; in that sense, they were not extraordinary.

Nor, given the record, is this a case where, considering several circumstances in totality, the harshness factor should weigh in favor of finding an extraordinary and compelling reasons for granting compassionate release. Compare, e.g., United States v. Amerson, No. 05-CR-0301, 2023 WL 4497767, at *6 (E.D.N.Y. July 12, 2023) (finding where, among other considered circumstances, defendant had served more than 18 years of a 32-year sentence, and suffered serious health conditions, including type II diabetes which was worsening and proving difficult for defendant to manage with necessary self-care, "the harshness of COVID-related restrictions weigh[ed] in favor of a sentence reduction even if they d[id] not independently constitute an extraordinary and compelling reason to grant compassionate release" (emphasis added)). Upon the record, Defendant has not shown any extraordinary or compelling reason for a sentence reduction.

As to the Alleged Sentencing Disparity: "The court, in determining the particular sentence to impose, shall consider," among other things, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(2)(6) (emphases added). Of significance, "[h]owever, a court is not required to consider disparities between co-defendants." United States v. Johnson, 671 F. Supp. 3d 265, 283 (E.D.N.Y., 2023) (citing United

States v. Frias, 521 F.3d 229, 236 (2d Cir. 2008); United States
v. Medina, 607 F. App'x 60, 61 (2d Cir. 2015) (summary order)).

Defendant's substantial participation in the oxycodone
distribution scheme coupled with his significant criminal history
were factors considered by this Court in fashioning its sentence.
(See Opp'n at 7.)   Now, other than stating the length of the
sentences received by his co-defendants (see Motion at 8-9),
Defendant does not explain whether his co-defendants had similar
records or whether they had similar roles in the distribution
scheme.   Yet, as the party seeking a sentence reduction, it is
Defendant's burden to do so.   See generally United States v. Lake,
No. 14-CR-0264, 2023 WL 8810620, at *3 (E.D.N.Y. Dec. 20, 2023).
Thus, at a minimum, the absence of such information stymies the
Court's ability to assess whether there is any unwarranted
disparity in Defendant's sentence.   In any event, when sentencing
Defendant, the Court considered his leadership role in the drug
conspiracy, which led to a sentence longer than his co-defendants.
Hence, as persuasively argued by the Government, "any sentencing
disparity here is nothing more than a function of the [D]efendant's
larger responsibility in the conspiracy and his significant
criminal history." (Opp'n at 9.)

As to Defendant's Rehabilitation Efforts:   Defendant
also asserts his post-sentence rehabilitation efforts warrant a
sentence reduction.   (See Motion at 8; Reply at 5.)   More

specifically, Defendant asserts he: has maintained "clear conduct over the last several years"; is a "[m]odel [i]nmate"; "maintains strong [f]amily [t]ies"; and, has an inmate job, receiving "[e]xcellent [w]ork [e]valuations." (Id.)  Defendant also presents evidence showing he has completed several classes and programs. (See Certificates, Ex. D, ECF No. 157 at ECF pp. 24-36, attached to Motion; see also Reply at 5 (stating Defendant "has not been a saint since he has been in federal custody, however, over the past ten years he has accomplished a host of ACE and Classes to better himself"); Supp. Br., ECF No. 163.)  And, in further support of his Motion, Defendant claims to have a job offer upon release from custody.  (See Supp. Br., ECF No. 163; see also Bowman Dec. 16, 2023 Job Offer Letter, Ex. A, ECF No. 163 at ECF p.6.)

In opposition, the Government argues rehabilitation efforts are neither extraordinary nor compelling.  (See Opp'n at 8.)  In further support thereof, it notes Defendant's "disciplinary record indicates he has been sanctioned multiple times over the past several years, including for missing work assignments, circumventing email monitoring, refusing to obey orders[,] and stealing."  (Opp'n at note 4 (citing Moss's "Inmate Discipline Date, Chronological Disciplinary Record" (dated Jan. 11, 2024)).) Review of said record verifies the Government's position.  Cf., e.g., United States v. Alvarez, No. 89-CR-0229, 2020 WL 4904586, at *7 (E.D.N.Y. Aug. 20, 2020) (finding, where defendant cites no

"evidence of his changed circumstance, except for his uncorroborated assertion that he only committed 'a few minor disciplinary violations over the course of his'" incarceration, "that [d]efendant has not provided sufficiently exceptional evidence of his rehabilitation to warrant a reduction of his sentence"). Moreover, it is well-settled that "rehabilitation alone shall not be considered an extraordinary and compelling reason." Brooker, 976 F.3d at 237-38 (citing 28 U.S.C. § 944(t)); United States v. Wagner, No. 17-CR-0106, at *7 (E.D.N.Y. May 31, 2024) (same (quoting Brooker)). Rather, "[m]aking good use of one's time in prison is not uncommon, and indeed is expected." United States v. Mack, No. 12-CR-0111, 2022 WL 902958, at *2 (S.D.N.Y. Mar. 28, 2022) (citing Alvarez, 2020 WL 4904586, at *7). At bottom, Defendant's rehabilitative efforts, while commendable, are not remarkable. See Vasquez, 2024 WL 2385264, at *5 (E.D.N.Y., 2024) ("What constitutes rehabilitation is left to the Court's discretion, but courts in this district have considered the following factors: the defendant's 'maintenance of familial and societal relationships; letters of support both from community members and prison staff; conduct and disciplinary records while incarcerated; . . . any achievements and education obtained while incarcerated; . . . gains in maturity[;] and other clear signs that a defendant's incarceration has had rehabilitative value'."

(quoting United States v. Byam, No. 12-CR-0586, 2024 WL 1556741, at *8 (E.D.N.Y. Apr. 10, 2024)) (emphasis added).

                              ***

       Even considering in combination all the circumstances presented by Defendant, their totality does not rise to the level of extraordinary and compelling.  Hence, Defendant has not met his burden of showing entitlement to compassionate release.  See Jones, 17 F.4th at 374 ("Thus, extraordinary and compelling reasons are necessary—but not sufficient—for a defendant to obtain relief under § 3582(c)(1)(A).").

       C.    The Section 3553(a) Factors[3]

       "The court confronted with a compassionate release motion is still required to consider all the Section 3553(a) [F]actors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) [F]actors override, in any particular case, what would otherwise be extraordinary and compelling circumstances."  Gotti, 433 F. Supp. 3d at 615; see also Jones, 2023 WL 8613867, at *2 ("[A] district court may deny a motion for compassionate release in 'sole reliance' on the

_____

[3]    "Many of the applicable [Section] 3553(a) factors are incorporated in the Court's discussion of extraordinary and compelling circumstances."  Vasquez, 2024 WL 2385264, at *6 (quoting United States v. Campbell, 647 F. Supp. 3d 76, 89) (E.D.N.Y. 2022)).

Section 3553(a) [F]actors, without determining 'whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction.'"); Jones, 17 F.4th at 374 ("[A] district court's 'reasonable evaluation of the Section 3553(a) [F]actors' is 'an alternative and independent basis for denial of compassionate release.'" (quoting United States v. Robinson, 848 F. App'x 477, 478 (2d Cir. 2021)).

> The [Section 3553(a) F]actors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a)(1)-(2).

Johnson, 671 F. Supp. 3d at 283.

The Government contends the Section 3553(a) Factors weigh heavily against a sentence reduction. (See Opp'n at 6-9.) It focuses upon Defendant's leadership role in the underlying oxycodone distribution scheme, as well as highlights Defendant's significant criminal history.  (See id. at 7.)

The Court observes that consideration of the Section 3553(a) Factors in this instance bears a striking similarity to

the court's consideration of said Factors when ruling upon a compassionate release motion in the <u>Carr</u> case.   There, the Court stated, in relevant part:

> The 3553(a) factors considered at the time of sentencing have not changed.   Defendant was part of a conspiracy to distribute millions of oxycodone tablets and the Court found that, in terms of relative culpability, [d]efendant was one of the most culpable in the group of defendants charged in this case.   According to the indictment, Defendant was a Crew Chief who employed dozens of crew members and was responsible for the distribution of 5,340 30-milligram pills of oxycodone.   The instant offense was [d]efendant's sixth conviction following a long criminal record, and [d]efendant has been incarcerated at least twice in the past for selling drugs.   At sentencing, the Court observed that there is no reason to think that these prior periods of incarceration caused any change in behavior, and there was every reason to believe [d]efendant would continue to engage in criminal activity without some deterrence. Defendant at this time has served only 73 months of his 132-month sentence.   Releasing [d]efendant now would not appropriately reflect the "nature and circumstances of the offense," or the "need for the sentence imposed" "to reflect the seriousness of the offense," "to afford adequate deterrence to criminal conduct" or "to protect the public from further crimes."

<u>United States v. Carr</u>, No. 14-CR-0055, 2020 WL 1689771, at *3 (S.D.N.Y. Apr. 7, 2020).   The same holds true here.   Indeed, when sentencing Defendant to a below-Guidelines, 180-month sentence, in considering the applicable Section 3553(a) Factors, this Court stated its sentence was "necessary" because it "shows [the] very

seriousness of the crime.  It shows [Defendant's] criminal history, [Defendant's] past, [his] ability to hopefully stop the addictions that [Defendant] ha[s;] it protects society."  (Sent'g Tr., ECF No. 159, 51:3-7; <u>see also</u> Statement of Reasons, Section VIII.) Defendant has not presented anything to change the Court's analysis of the Section 3553(a) Factors.  In other words, as the Government contends:  "There is no basis to reduce what the Court determined was a 'necessary' sentence."  (Opp'n at 7.)

Hence, having considered the applicable Section 3553(a) Factors, in its discretion, the Court finds, even if Defendant had presented extraordinary and compelling circumstances warranting compassionate release, <u>which he has not</u>, the Section 3553(a) Factors would override those circumstances.  Instead, this Court's 180-month sentence of imprisonment continues to be appropriate to, <u>inter alia</u>: reflect the severity of the offense; provide just punishment; adequately deter criminal conduct; and protect the public from the Defendant, thereby satisfying the applicable Section 3553(a) Factors.


<u>CONCLUSION</u>

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Compassionate Release Motion (ECF No. 157) is **DENIED** in its entirety.

**IT IS FURTHER ORDERED** that the Clerk of Court mail a copy of this Order to the Defendant at his current address of record, including the notation "LEGAL MAIL" on the mailing envelope.

**SO ORDERED.**

 /s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: August 7, 2024
       Central Islip, New York